UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN SPOTVILLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6661** |
| **HOWARD PRINCE, ET AL** | **SECTION "F"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.   Factual and State Procedural Background**

The petitioner, John Spotville ("Spotville"), is a convicted inmate incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] On February 7, 1997, Spotville and a co-

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 2.

defendant, Bryan T. Harper, were charged by bill of information in Orleans Parish with one count of armed robbery of Neil Taylor and one count of armed robbery of Andre Warren.[3]

The record reflects that, on January 2, 1997, Neil Taylor drove to Andre Warren's house to watch the Sugar Bowl football game.[4] After arriving, he left to buy beer at a nearby store. Upon his return to Warren's house, two men, later identified as Spotville and Harper, approached him and pushed him into the house while screaming, "put your head down," and "get on the sofa." The men were not wearing masks. One of the men put a gun to Taylor's head and as he "clicked" the gun, he told Taylor to give him his wallet and keys. Taylor complied. The men also took Warren's keys, wallet, and cellular phone. The first man then handed the gun over to the second man and left him guarding Taylor and Warren.

The first man then ransacked the bedroom at the back of the shotgun style house. The second man sent Warren and Taylor into the kitchen, which was the last room of the house. The second man asked for something to tie them up with. At that time, Taylor heard the outside gate slam, and the gunman walked back and forth through the house. After a while, the house became quiet. Warren and Taylor found that the telephone had been ripped out of the wall and Taylor's car was gone.

Several days later, Taylor's car was spotted by a levy police officer who noticed the license plate was missing. As the officer attempted to stop the car, it slowed and one man jumped out. The car then sped away and the officer pursued it. The car eventually crashed into a dump truck. At that

---

[3] St. Rec. Vol. 1 of 5, Bill of Information, 2/7/97.

[4] The facts of the case were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal. St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-0839, pp. 2-4, 10/3/97; *State v. Harper*, 798 So.2d 338 (La. App. 4th Cir. 2001) (Table).

time, the remaining three men got out and ran. One man ran into a neighborhood and the other two, Harper and Spotville, jumped into the canal and started swimming. When Harper got to the other side, he surrendered. Spotville ran into the woods and was later apprehended by officers who arrived as back-up.

Spotville and Harper were tried jointly before a jury on November 5 and 6, 1997, and both were found guilty as charged.[5] On January 8, 1998, the Trial Court sentenced Spotville to serve 25 years in prison on each count to run concurrently and without benefit of parole, probation, or suspension of sentence.[6] The Court later sentenced Harper on May 27, 1999, as a multiple offender to serve 49 ½ years in prison without benefit of parole, probation, or suspension of sentence.[7]

Almost two years later, on February 7, 2001, counsel for Spotville and Harper moved for and was granted an out of time appeal.[8] In the joint appeal, counsel raised three assignments of error:[9] (1) the Trial Court erred when it failed to advise the defendants at sentencing of the delays for seeking post-conviction relief; (2) Spotville's sentences were excessive; and (3) Harper's sentences were excessive. On October 3, 2001, the Louisiana Fourth Circuit affirmed the convictions and sentences finding that the first claim was without merit. The Court also advised Spotville and Harper in its opinion of the delays for seeking such relief. The Court also held that the excessive

---

[5]St. Rec. Vol. 1 of 5, Trial Minutes, 11/5-6/97; St. Rec. Vol. 3 of 5, Jury Verdict (Count 1, Harper), 11/6/97; Jury Verdict (Count 2, Harper), 11/6/97; Jury Verdict (Count 1, Spotville), 11/6/97; Jury Verdict (Count 1, Spotville), 11/6/97; Trial Transcript, 11/6/97.

[6]St. Rec. Vol. 1 of 5, Sentencing Minutes (Spotville), 1/8/98.

[7]St. Rec. Vol. 1 of 5, Sentencing Minutes (Harper), 5/27/99.

[8]St. Rec. Vol. 3 of 5, Minute Entry, 2/7/01.

[9]St. Rec. Vol. 3 of 5, Appeal Brief, 2001-KA-0839, 6/13/01.

sentence claims were not preserved, and therefore the sentences were not subject to review on appeal or otherwise.[10]

Spotville did not seek rehearing or apply for further review in the Louisiana Supreme Court.[11] His convictions and sentences therefore became final 30 days later, on November 2, 2001, when the time for doing so expired. *Butler v. Cain,* 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell,* 319 F.3d 690, 694-95 (5th Cir. 2003)) (for AEDPA purposes an appeal is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see also*, *Jiminez v. Quarterman*, __ U.S. __, 129 S. Ct. 681, 686-87 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

On August 13, 2007, Spotville filed an application for writ of mandamus in the Louisiana Fourth Circuit.[12] In that pleading, Spotville represented that, on June 16, 2007, he filed a request for production of documents with the state trial court and the court had not issued a ruling. He sought an order to compel the trial court to act.

On September 14, 2007, the Louisiana Fourth Circuit denied the application advising Spotville to get the documents from the district attorney or pursue relief through Louisiana's Public

---

[10]St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-0839, pp. 2-4, 10/3/97; *State v. Harper*, 798 So.2d at 338.

[11]Harper, acting pro se, sought review on his own behalf from the Louisiana Supreme Court as to his convictions and sentences. *See* Contents of St. Rec. Vol. 4 of 5.

[12]St. Rec. Vol. 5 of 5, 4th Cir. Writ Application, 2007-K-1019, 8/13/07.

Records Act.[13] The Louisiana Supreme Court also denied his related writ application as moot, citing *Chapman v. District Attorney*, 934 So.2d 128, 130 (La. App. 1st Cir. 2006).[14]

**II.   Federal Petition**

On October 7, 2009, the Clerk of this Court filed Spotville's petition for federal habeas corpus relief in which he raised three grounds for relief:[15] (1) the Trial Court erred in failing to advise him at sentencing of the delays for filing for post-conviction relief; (2) his sentences were excessive; (3) The Trial Court erred by not following La. Code Crim. P. art. 894.1(B) at sentencing; (4) The Trial Court erred in failing to articulate the reasons for imposing sentences other than those statutorily mandated.

The State filed a response in opposition to Spotville's petition arguing that the petition was not timely filed, and should be dismissed for that reason.[16]

**III.   General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[17] applies to this petition, which is deemed filed in this Court under the federal

---

[13]St. Rec. Vol. 5 of 5, 4th Cir. Order, 2007-K-1019, 9/14/07.

[14]*State ex rel. Spotville v. State*, 988 So.2d 257 (La. 2008); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2007-KH-2081, 8/22/08; La. S. Ct. Writ Application, 07-KH-2081, 10/25/07 (postal metered 10/3/07, dated 9/27/07).

[15]Rec. Doc. No. 2.

[16]Rec. Doc. No. 8.

[17]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on September 22, 2009.[18] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State argues that Spotville's petition was not timely filed. The Court agrees and will address this defense.

## IV.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[19] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above,

---

[18] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Spotville's petition on October 7, 2009, when pauper status was granted. Spotville's signature on the petition is dated September 22, 2009. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing.

[19] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

Spotville's conviction became final on November 2, 2001, which was 30 days after the Louisiana Fourth Circuit affirmed his convictions and sentences on out-of-time appeal.

Under the plain language of § 2244, Spotville had until Monday, November 4, 2002,[20] to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Spotville's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is

---

[20]November 2, 2002, was a Saturday so the deadline would fall to the next business day under both federal and state law.

7

unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 122 (2002) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

Requests for documents and transcript copies are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or

equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In this case, the AEDPA's one-year filing period began to run on November 3, 2001, the day after Spotville's convictions became final. It ran uninterrupted until Monday, November 4, 2002, when it expired. Spotville had no properly filed state post-conviction or other collateral review pending during that time period. His next and only other state court filing was the series of documents filed over four years later in 2007 and 2008 in which he sought production of documents from his trial record. While such requests for documents do not provide tolling, *see supra*, *Osborne v. Boone*, 1999 WL 203523, at *2, *et alia*, even if they could, pleadings filed after expiration of the AEDPA filing period do not provide any tolling benefit. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Spotville has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

Spotville's federal petition is deemed filed on September 22, 2009, which is almost seven years after the AEDPA filing period expired on November 4, 2002. Spotville's federal petition must be dismissed as untimely filed.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that John Spotville's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[21]

New Orleans, Louisiana, this 25th day of February, 2011.

*[signature]*
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[21]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.